**No. 24-13509-CC**

In the

# United States Court of Appeals
## for the Eleventh Circuit

**GEOFFREY ANDERSON, MULTIMEDIA TECHNOLOGIES, INC., AND PEACH HOSPITALITY OF GEORGIA, LLC,**

*Plaintiffs-Appellees*,

v.

**CITY OF ATLANTA, GEORGIA**,

*Defendant-Appellant*.

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 1-21-CV-01280 — Victoria Marie Calvert, *Judge*

## BRIEF OF PLAINTIFFS-APPELLEES GEOFFREY ANDERSON, MULTIMEDIA TECHNOLOGIES, INC., AND PEACH HOSPITALITY OF GEORGIA, LLC

Richard L. Robbins
Georgia Bar No. 608030
Craig G. Kunkes
Georgia Bar No. 963594
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Tel:   (678) 701-9381
Fax:   (404) 856-3255
rrobbins@robbinsfirm.com
ckunkes@robbinsfirm.com

*Counsel for Plaintiffs-Appellees*
*Multimedia Technologies, Inc. and*
*Geoffrey Anderson*

Ken E. Jarrard
Georgia Bar No. 389550
Jarrard & Davis, LLP
222 Webb Street
Cumming, Georgia 30040
Tel: (678) 455-7150
kjarrard@jarrard-davis.com

*Attorney for Plaintiff-Appellee*
*Peach Hospitality of Georgia, LLC*

*Geoffrey Anderson, et al. v. City of Atlanta, Georgia*
11th Circuit Docket No. 24-13509-CC

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Plaintiffs-Appellees Geoffrey Anderson ("Anderson"), Multimedia Technologies, Inc. ("Multimedia"), and Peach Hospitality, Inc. ("Peach") (collectively, "Plaintiffs") hereby certify that the below is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1.  Anderson, Geoffrey: Plaintiff-Appellee and Plaintiff in underlying case, and President and Chief Executive Officer of Multimedia.

2.  Batten, Hon. Timothy C., Sr.: Former Judge in underlying case, United States District Court for the Northern District of Georgia.

3.  Calvert, Hon. Victoria Marie: Judge in underlying case, United States District Court for the Northern District of Georgia.

4.  City of Atlanta, Georgia: Defendant-Appellant.

5.  Coleman, Harrison: Peach's registered agent, who is listed on arrest citations.

6.  Foster, Joshua Stanley: Counsel for Defendant-Appellant.

7.  Germain, Meredith W.: Counsel for Defendant-Appellant.

8.  Hooper, Kelli Byers: Former counsel for Defendant-Appellant.

9.  Jarrard, Kenneth Edward: Counsel for Peach.

10. Jarrard & Davis, LLP: Counsel for Peach.

*Geoffrey Anderson, et al. v. City of Atlanta, Georgia*
11th Circuit Docket No. 24-13509-CC

11.    Kunkes, Craig Grayson: Counsel for Multimedia and Anderson.

12.    Miller, Staci J.: Former counsel for Defendant-Appellant.

13.    Multimedia Technologies, Inc.: Plaintiff-Appellee and Plaintiff in underlying case.

14.    Peach Hospitality of Georgia, LLC: Plaintiff-Appellee and Plaintiff in underlying case.

15.    Perkins, Kimberly M.: Former counsel for Defendant-Appellant.

16.    Robbins Alloy Belinfante Littlefield LLC: Counsel for Multimedia and Anderson.

17.    Robbins, Richard L.: Counsel for Multimedia and Anderson.

18.    Ross, Valerie A.: Counsel for Defendant-Appellant.

19.    Turner Ross Germain, LLC: Counsel for Defendant-Appellant.

20.    Washington, Shemia: Former counsel for Defendant-Appellant.

## CORPORATE DISCLOSURE STATEMENT

Counsel for Multimedia and Peach certify that Multimedia and Peach are not publicly traded companies or corporations and that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted this 5th day of March, 2025.

*/s/ Craig G. Kunkes*
Craig G. Kunkes

*Geoffrey Anderson, et al. v. City of Atlanta, Georgia*
11th Circuit Docket No. 24-13509-CC

*Counsel for Plaintiffs-Appellees Multimedia Technologies, Inc. and Geoffrey Anderson*

*/s/ Ken E. Jarrard (with express permission)*
Ken E. Jarrard

*Counsel for Plaintiff-Appellee Peach Hospitality of Georgia, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ..................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-2

TABLE OF CONTENTS................................................................................ i

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ..............................................v

STATEMENT OF JURISDICTION............................................................... vi

INTRODUCTION ........................................................................................1

STATEMENT OF THE ISSUES.....................................................................5

STATEMENT OF THE CASE........................................................................5

    I.      Procedural History................................................................5

    II.     Statement of the Facts .......................................................10

            A.     The 1982 Sign Code...............................................10

            B.     The Subject Signs Were Originally Permitted in 1993, and They Have Been Revalidated by the City Numerous Times.........................................................................12

            C.     The City Amends Its Sign Ordinance In 2015 In Response To The Supreme Court's Decision in *Reed v. Town of Gilbert*. .........................................................13

            D.     The City's Issuance Of Conversion Permits Approving The Upgrade Of The Subject Signs Was Appealed To The BZA. ................................................................14

            E.     The Superior Court Appeal Of The BZA's Denial Of The Challenge To The Conversion Permits.....................................15

F.    The City's Enforcement Actions After The Superior Court Appeal. ..............................................................17

III.   Standard Of Review ...........................................................18

SUMMARY OF THE ARGUMENT ......................................................19

ARGUMENT AND CITATION OF AUTHORITY .............................................21

I.    The District Court Properly Concluded That Plaintiffs' Constitutional Challenge to The 1982 Sign Code Was Not Moot Because The City Has Not Discontinued Applying It, and Because Multimedia Has Vested Rights in the Subject Signs and the Permits For Such Signs.............................................21

A.    The City Has Not Discontinued Enforcing The 1982 Sign Code. ...........................................................22

B.    Multimedia's Property Rights In The Subject Signs And Permits Vested Prior To The Enactment Of The 2015 Ordinance. ................................................26

II.   The District Court Properly Concluded That The City Was Taking Action Against Plaintiffs Based On The 1982 Sign Code.............................................................31

CONCLUSION ....................................................................34

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ..................................................................36

ii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Brantley County Development Partners, LLC v. Brantley County, Ga.*,
  540 F. Supp. 3d 1291 (S.D. Ga. 2021) ...........................................................26

*Carithers v. Mid-Continent Cas. Co.*,
  782 F.3d 1240 (11th Cir. 2015) ....................................................................18

*Chanel, Inc. v. Italian Activewear, Inc.*,
  931 F.2d 1472 (11th Cir. 1991) ....................................................................19

*Crown Media, LLC v. Gwinnett County, Ga.*,
  380 F.3d 1317 (11th Cir. 2004) ................................................. 22, 26, 29, 30

*Fayette Cnty. v. Seagraves*,
  264 S.E.2d 13 (Ga. 1980) ........................................................................9, 25

*Foster v. Vickery*,
  42 S.E.2d 117 (Ga. 1947) ..............................................................................9

*Fulton County v. Action Outdoor Advertising, JV*,
  289 Ga. 347 (2011) ......................................................................... 26, 27, 28

*Irby v. Bittick*,
  44 F.3d 949 (11th Cir. 1995) ........................................................................19

*Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*,
  162 F.3d 627 (11th Cir. 1998) ................................................................ 22, 23

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).......................................................................................18

*National Advertising Co. v. City of Miami*,
  402 F.3d 1329 (11th Cir. 2005) ....................................................................23

*Questco Ltd. v. City of Conyers, Ga.*,
  Case No. 1:03-CV-3489-JTC, 2005 WL 8154508 (N.D. Ga. Sept. 22, 2005)
  ......................................................................................................................22

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015).............................................................................2, 13

*Seay Outdoor Adver., Inc. v. City of Mary Esther*,
    397 F.3d 943 (11th Cir. 2005) ......................................................22

*Smith v. Owens*,
    848 F.3d 975 (11th Cir. 2017) ......................................................18

*Tilley Properties, Inc. v. Bartow County*,
    261 Ga. 153 (1991) ............................................................... 26, 28

## Statutes

28 U.S.C. § 1291 ............................................................................. vii

28 U.S.C. § 1331 .............................................................................. vi

42 U.S.C. § 1983 ...............................................................................6

O.C.G.A. § 5-3-1..............................................................................15

O.C.G.A. § 5-4-1..............................................................................15

O.C.G.A. § 5-4-1(a) .........................................................................16

O.C.G.A. § 5-4-3..............................................................................16

## Rules

Fed. R. App. P. 32(a)(5)...................................................................36

Fed. R. App. P. 32(a)(6)...................................................................36

Fed. R. App. P. 32(a)(7)(B) .............................................................36

Fed. R. App. P. 32(f).......................................................................36

Fed. R. Civ. P. 54(b) .........................................................................8

Fed. R. Civ. P. 56 ...........................................................................18

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs do not request oral argument. This case deals with well-settled law and largely undisputed facts. Plaintiffs do not believe that oral argument is necessary to aid the Court in determining the questions at issue on this appeal.

## STATEMENT OF JURISDICTION

Plaintiffs brought this action against Defendant City of Atlanta (the "City") in the U.S. District Court for the Northern District of Georgia ("District Court"), seeking a declaratory judgment that the Sign Ordinances within Chapter 28 of the 1982 Atlanta Zoning Ordinance (the "1982 Sign Code") violate the First and Fourteenth Amendments to the U.S. Constitution (Count I), seeking injunctive relief to prevent enforcement of the 1982 Sign Code against them (Count II), and asserting a claim under 42 U.S.C. § 1983 for unlawful government taking in violation of the Fifth and Fourteenth Amendments based on the City's enforcement of the 1982 Sign Code (Count III). (Doc. 1.)[1]   The District Court therefore had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims concern federal questions arising under "the Constitution, laws, or treaties of the United States."

On September 24, 2024, the District Court entered an Order ("Summary Judgment Order") in which it granted Plaintiffs' Motion for Summary Judgment on Plaintiffs' claims for (1) declaratory judgment that the 1982 Sign Code violates the First and Fourteenth Amendments to the U.S. Constitution (Count I); and (2) injunctive relief prohibiting the City from enforcing the 1982 Sign Code against

---

[1] Pursuant to Eleventh Circuit Rule 28-5, references to the record herein are made to the CM/ECF District Court docket number and page number.

them (Count II).  (Doc. 61 at 6-9.)  The District Court further held that this ruling ends the case because it makes Plaintiffs' remaining claim for injunctive relief under the Fifth Amendment moot.  (*Id.* at 9.)

On the same date, the District Court entered a Judgment "in favor of Plaintiffs on their claims for declaratory and injunctive relief[.]"  (Doc. 62.)  Subsequently, on October 23, 2024, the City filed its Notice of Appeal of the Summary Judgment Order and the Judgment.  (Doc. 63.)  Thus, this Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## <u>INTRODUCTION</u>

This case arises from the City's attempt to retroactively apply the unconstitutional, content-based 1982 Sign Code against two signs that have been permitted since 1993 (and remain permitted) and that have been continuously displayed and maintained for over 30 years. Multimedia owns a Wall Sign and a Rooftop Sign (collectively, the "Subject Signs") that are located at the property owned by Peach at 1655 Peachtree Street, N.E., Atlanta, Georgia (the "Property"). It is undisputed that the Subject Signs were originally permitted in 1993, that they were erected in accordance with those issued permits, and that they have been continuously displayed and maintained in compliance with such permits. The permits authorizing the Subject Signs have never been rescinded.

Over 27 years after these signs were originally permitted, the City changed its position and claimed that the Subject Signs allegedly do not comply with the 1982 Sign Code and, thus, are "illegal signs" under the City's current sign ordinance. The City relies on this retroactive application of the 1982 Sign Code as its basis for its enforcement actions relating to the Subject Signs.

The City's position has a fatal defect: the 1982 Sign Code is an unconstitutional, content-based law that violates the First and Fourteenth Amendments of the U.S. Constitution. The City is aware of this defect as evidenced by the fact that it amended its Sign Ordinance in 2015 in response to the U.S.

Supreme Court's landmark decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), to eliminate content-based restrictions in the 1982 Sign Code. Indeed, The City admits that this amendment attempted to eliminate content-based restrictions in the 1982 Sign Code. Such content-based restrictions are presumptively unconstitutional, and the City has not even attempted to provide any purported justifications for them that can survive strict scrutiny. Thus, the City's attempt to retroactively apply the 1982 Sign Code against Plaintiffs is both inequitable and unconstitutional. Accordingly, the District Court properly granted Plaintiffs' Motion for Summary Judgment on their claim seeking a declaration that the 1982 Sign Code is unconstitutional, and on their claim seeking injunctive relief that prohibits the City from taking adverse action against Plaintiffs or the Subject Signs based on its position that the Subject Signs were not lawfully erected under the 1982 Sign Code.

Critically, the City's Appellant Brief does <u>not</u> dispute that the 1982 Sign Code is a facially unconstitutional, content-based law that violates the First Amendment. Instead, the City argues that Plaintiffs' challenge to the 1982 Sign Code is purportedly moot because it was subsequently replaced by the 2015 Sign Code. This argument is incorrect and inconsistent with the City's own enforcement position. It is undisputed that the crux of the City's position is that the permits for the Subject Signs were invalid under the 1982 Sign Code, and, therefore, such signs could not be considered lawful, non-conforming signs under the 2015 Sign Code. If, however,

the 1982 Sign Code is unconstitutional, then there were no valid restrictions when Multimedia applied for permits for the Subject Signs, and Multimedia obtained vested rights, which the City cannot take away more than 25 years after the fact. The City cannot have it both ways. If the 1982 Sign Code is the vehicle by which the City is seeking to remove the Subject Signs, then that 'vehicle' must be lawful and enforceable. If, however, the 1982 Sign Code is not lawful and enforceable, then it cannot be used as a bludgeon to enforce anything.

The law on mootness contemplates and provides exceptions for this type of scenario. Indeed, as discussed further below, two important exceptions apply: (1) the voluntary cessation exception; and (2) the vested rights exception. The voluntary cessation exception applies here because the City is still actively enforcing the 1982 Sign Code against Plaintiffs. This is evident for at least two reasons.

First, the City issued multiple arrest citations to Plaintiffs that allege violations of the 1982 Sign Code. The City's argument ignores this fact. These citations alone, however, show that the City's improper enforcement of the 1982 Sign Code is still occurring. Thus, this dispute is not moot.

Second, the City's argument that it is attempting to only enforce the 2015 Sign Code misses the mark because the City's assertion that the Subject Signs do not comply with the 2015 Sign Code is predicated on its position that such signs do not comply with the 1982 Sign Code. There is no dispute that the Subject Signs were

3

erected prior to the adoption of the 2015 Sign Code, and that the 2015 Sign Code allows lawful, non-conforming signs that were erected prior to its enactment to remain in use.  Despite the 2015 Sign Code's recognition of the rights of legal, non-conforming signs, the City contends that the Subject Signs are not lawful, nonconforming signs because they were improperly permitted under the <u>1982 Sign Code</u>.  Thus, the City's sole basis for its position that the Subject Signs do not comply with the 2015 Sign Code is its corresponding position that such signs do not comply with the unconstitutional 1982 Sign Code.  This fact was correctly recognized by the District Court, which held that "the 2015 Ordinance incorporates prior law by reference for the purpose of determining whether a sign is a nonconforming sign."  (Doc. 61 at 8.)  In such circumstances, Plaintiffs' claims cannot be moot because the City's efforts to enforce the 2015 Sign Code against the Subject Signs necessarily hinges on its argument that such signs do not comply with the 1982 Sign Code.

Additionally, the vested rights exception to the City's mootness argument is applicable here because Multimedia has vested rights in the Subject Signs and the permits issued for such signs.  When Multimedia obtained the permits for the Subject Signs in 1993, the unconstitutional 1982 Sign Code was in effect.  It is well settled that <u>because the 1982 Sign Code is unconstitutional, there were no valid restrictions on the Subject Signs when Multimedia applied for and obtained permits for such</u>

4

signs.  Thus, Multimedia obtained vested rights in its permits for the Subject Signs as well as in the Subject Signs themselves.  In such circumstances, where a party's vested rights depend upon the determination of whether a former ordinance is unconstitutional, the Eleventh Circuit has recognized that a constitutional challenge to such ordinance is not moot, even if it has been replaced.

## STATEMENT OF THE ISSUES

1.   Whether the District Court properly concluded that Plaintiffs' constitutional challenge to the 1982 Sign Code was not moot because the City has not discontinued applying the 1982 Sign Code, and because Multimedia has vested rights in the Subject Signs and the permits for such signs.

2.   Whether the District Court properly concluded that the City was taking action against Plaintiffs based on the 1982 Sign Code.

## STATEMENT OF THE CASE

## I.   Procedural History.

Plaintiffs initiated this action against the City on March 29, 2021.  (Doc. 1)  Plaintiffs asserted three claims in this action.  (*Id.*)  First, Plaintiffs asserted a declaratory judgment claim, which alleged that the 1982 Sign Code violates the First Amendment and Fourteenth Amendment of the U.S. Constitution, and which asked the Court to declare that the 1982 Sign Code is unconstitutional and unenforceable.  (*Id.* at 19–22, ¶¶ 38-45)  Second, Plaintiffs asserted a claim for violation of the right to freedom of speech and for injunctive relief, which also alleged that the 1982 Sign

5

Code violates the First Amendment and Fourteenth Amendment of the United States Constitution.  In this claim, Plaintiffs asked the Court to enjoin the City from enforcing the 1982 Sign Code against Plaintiffs, as this was the sole basis upon which the City contended that the Subject Signs were "illegal signs."  (*Id.* at 22–23, ¶¶ 46-50)  <u>Third</u>, Multimedia and Peach asserted a claim under 42 U.S.C. § 1983 for an improper government taking in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution and a request for injunctive relief, which alleged that the City's threats and enforcement actions against Plaintiffs arising out of the 1982 Sign Code constituted an unconstitutional taking of Multimedia's property and Peach's property without paying just compensation.  (*Id.* at 23–24, ¶¶ 51-55).

After the close of the discovery period, Plaintiffs moved for summary judgment on their claims against the City.  (Doc. 36).  Specifically, Plaintiffs asked the District Court to grant their motion for summary judgment and to enter a judgment (1) declaring that the 1982 Sign Code, specifically Section 16-28.019 of the 1982 Sign Code, violates the First and Fourteenth Amendments of the U.S. Constitution; and (2) permanently enjoining the City from enforcing the 1982 Sign Code or taking any action against Plaintiffs based on alleged violations of the 1982 Sign Code.  (Doc. 36-1 at 21).  Plaintiffs noted that granting their motion would end the case because it would make the remaining claim for injunctive relief under the Fifth Amendment moot.  (*Id.*)  The City filed a response brief in opposition to

Plaintiffs' motion for summary judgment, and Plaintiffs filed a reply in support of their motion. (Docs. 38, 40).

Following briefing on this summary judgment motion, the District Court issued a *sua sponte* Order and Notice of Intent to Enter Judgment Independent of the Motion ("Order and Notice"), which expressed concern that "Plaintiffs' claims are 'inextricably intertwined with' the Superior Court Order," and which directed the parties to file briefs "addressing whether the Court should grant summary judgment against Plaintiffs on all or part of their claims on the grounds that such claims are barred by the *Rooker-Feldman* doctrine (or related doctrines of issue or claim preclusion)." (Doc. 41 at 14-15). Plaintiffs and the City each filed briefs, as directed by the Order and Notice, and Plaintiffs filed a response to the City's brief. (Docs. 43, 45, 47).

On September 23, 2022, the District Court entered an Opinion and Order ("*Rooker-Feldman* Order") in which the District Court denied Plaintiffs' Motion for Summary Judgment as to claims by Multimedia and stayed such Motion "as to the claims of all other Plaintiffs." (Doc. 48 at 23). The District Court then *sua sponte* granted summary judgment in favor of the City and against Multimedia, and directed the Clerk to "enter a final judgment of dismissal" in favor of the City for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (*Id.* at 23-24). The District Court further stayed the case "as to the remaining claims of Plaintiffs

Peach and Anderson" until after the "issuance of the Court of Appeals' mandate" in the appeal. (*Id.* at 24.)

The District Court certified the judgment against Multimedia for immediate appellate review under Federal Rule of Civil Procedure 54(b).  (*Id.* at 23.) Accordingly, on September 26, 2022, the Clerk entered a Judgment against Multimedia. (Doc. 49.) Subsequently, Multimedia filed a Notice of Appeal pursuant to which it appealed the *Rooker-Feldman* Order and corresponding Judgment to this Court. (Doc. 50; Case No. 22-13625.) Ultimately, this Court held that the Judgment entered pursuant to the *Rooker-Feldman* Order did not constitute a final judgment under Rule 54(b). (Doc. 57 at 5-10.) Thus, this Court held that it lacked jurisdiction to consider Multimedia's appeal until a final judgment was entered in this case, and the appeal was dismissed for lack of jurisdiction.  (*Id.*)

After the appeal was dismissed, Multimedia filed a motion to revise or reconsider, which asked the District Court to reconsider the *Rooker-Feldman* Order and to allow Multimedia's claims and motion for summary judgment to be considered at the same time as the other Plaintiffs' claims and motion for summary judgment. (Doc. 59.) The City did not file a response in opposition to such motion. (Doc. 61 at 2.)

On September 24, 2024, the District Court entered the Summary Judgment Order in which it granted Multimedia's motion to reconsider and Plaintiffs' motion

8

for summary judgment against the City. (*See generally id.*) In the Summary Judgment Order, the District Court held that "the 1982 Sign Code is a content-based regulation of speech," and that the City did not attempt to meet its "burden of defending the code under strict scrutiny." (*Id.* at 8.)

The District Court further rejected the City's argument that Plaintiffs' challenge to the 1982 Sign Code is purportedly moot because the 2015 Ordinance replaced the 1982 Sign Code. (*Id.*) In doing so, the District Court held that "the 2015 Ordinance incorporates prior law by reference for the purpose of determining whether a sign is a nonconforming sign." (*Id.*) Thus, the District Court recognized:

> If the 1982 Sign Code was unconstitutional at the time the 1993 permit was (apparently wrongfully) issued, then the Subject Signs are nonconforming signs under the 2015 Ordinance because in the absence of a valid zoning ordinance, "an owner[] [has the] right to freely use his property for any lawful purpose." *Fayette Cnty. v. Seagraves*, 264 S.E.2d 13, 15 (Ga. 1980) (quoting *Foster v. Vickery*, 42 S.E.2d 117 (Ga. 1947)). Accordingly, there is a live controversy as to Plaintiffs' rights under the 2015 Ordinance.

(*Id.*) (emphasis added).

Accordingly, the District Court directed the clerk to enter a judgment against the City, which provides that: (1) "the 1982 Sign Code, specifically, Section 16-28.019 of the 1982 Sign Code is **DECLARED** an unconstitutional infringement of the right of free speech protected by the First and Fourteenth Amendments to the United States Constitution[;]" and (2) "the City is **PERMANENTLY ENJOINED** 'from enforcing' the 1982 Sign Code or taking any action against Plaintiffs based on

alleged violations of the 1982 Sign Code." (*Id.* at 9.) The same day, a corresponding Judgment was entered in favor of Plaintiffs on their claims for declaratory and injunctive relief. (Doc. 63.)

## II.    **Statement of the Facts**.

### A.    **The 1982 Sign Code**.

In 1993, the Property was regulated by the 1982 Atlanta Zoning Ordinance. (Doc. 48 at 2; Doc. 41 at 2; Doc. 36-4 at 1, ¶ 1 Doc. 6 at 6-7, ¶ 12.) Chapter 28 of the 1982 Atlanta Zoning Ordinance contains the 1982 Sign Code, as it existed in 1993. (Doc. 48 at 2; Doc. 41 at 2; Doc. 36-4 at 2, ¶ 2; Doc. 6 at 6-7, ¶ 12; Doc. 37-1 at 13-14, 51-84.)

Section 16-28.019 of the 1982 Sign Code generally requires signs to be permitted before they can be erected, located, or maintained. (Doc. 48 at 2; Doc. 41 at 2; Doc. 36-4 at 2, ¶ 3; Doc. 37-1 at 73-80.) Section 16-28.019(1) of the 1982 Sign Code, however, contains numerous exemptions from this permit requirement. (Doc. 48 at 2-3; Doc. 41 at 2; Doc. 36-4 at 2, ¶ 4; Doc. 37-1 at 73-74.) Specifically, Section 16-28.019(1) exempts the following eight "signs or activities related to signs" from the sign permit requirement:

    (a)    *Address or identification signs*: One (1) sign, not exceeding two (2) square feet in surface area, indicating the address and/or the name of the occupant and/or premises, or the accessory use of a dwelling for a home occupation or for professional purposes.

    (b)    *Temporary campaign signs*: Temporary campaign signs displayed on private property, not exceeding 35 square feet in surface area, used

in connection with political campaigns or civic non-commercial health, safety or welfare campaigns, provided that all such signs shall exhibit the date of the conclusion of the campaign and shall be removed within 15 days of the date of conclusion.

(c)   *Memorial signs or tablets*: Memorial signs or tablets, names of buildings, and date of erection, when part of any masonry surface or constructed of bronze or other incombustible materials.

(d)   *Bulletin boards*: A sign which primarily displays the name of public, charitable, educational or religious organization and/or institution and the upcoming events of such.

(e)   *Temporary construction signs*: Temporary construction signs shall be allowed without permit as follows:

  1.   Signs denoting the architect, developer, statistical data about the building, engineer and/or contractor when placed upon the premises of work under construction or involving alteration or removal, not exceeding 15 square feet in surface area in R-1 through R-G districts and 50 square feet in surface area in other districts.

  2.   Signs warning of special hazards or required precautions not to exceed a size reasonable [sic] necessary for the purpose intended. All such temporary construction signs shall be removed when no longer necessary, or within seven (7) days after completion of the project.

(f)   *Temporary real estate signs*: One (1) unlighted real estate sign advertising the sale, rental, lease, and one (1) unlighted sign indicating that a building or buildings are open for inspection, erected on the property . . . .

(g)   Signs indicating or limiting access to, or directing traffic movements on, premises. Signs indicating or limiting access to, or directing vehicular or traffic movement on, private premises, in such number and sizes as may be reasonably necessary, provided that no such sign shall exceed [four] square feet in area or bear advertising matter . . . .

11

    (h)    *Grand opening signs*: Signs advertising the 30-day grand opening period for new businesses (as defined in section 16-28.019(6)) shall be exempt from a permit.

(Doc. 48 at 3-4; Doc. 41 at 2-4; Doc. 36-4 at 2–3, ¶ 4; Doc. 37-1 at 73-74.)

### B.    <u>The Subject Signs Were Originally Permitted in 1993, and They Have Been Revalidated by the City Numerous Times</u>.

Multimedia is the owner and operator of the Subject Signs that are located at the Property, and Peach is the owner of the Property. (Doc. 48 at 2; Doc. 41 at 1-2; Doc. 36-4 at 4, ¶ 5; Doc. 39 at 2; Doc. 6 at 6, ¶¶ 9-10.) The original permits for the Subject Signs were issued by the City on or around May 27, 1993. (Doc. 48 at 4; Doc. 41 at 4; Doc. 36-4 at 4, ¶ 6; Doc. 39 at 2.) After these permits were issued, the Subject Signs were erected in compliance with such permits, and they have been part of the Atlanta skyline since then. (Doc. 48 at 4-5; Doc. 41 at 4-5; Doc. 36-4 at 4, ¶ 8; Doc. 37-1 at 48; Doc. 37-2 at 14-15.)

Subsequent to the original permits issued by the City in 1993, the City issued additional permits for the Subject Signs at least fifteen times between January 2002 and April 2008 (the "Copy Permits"). (Doc. 48 at 5; Doc. 41 at 5; Doc. 36-4 at 5, ¶ 9; Doc. 39 at 2.) Throughout the past twenty-five plus years the Subject Signs have always been in the same location, the same size and height, and in public view advertising various tenants who occupy and continue to occupy the building. (Doc. 48 at 5; Doc. 41 at 5; Doc. 39 at 2, ¶ 11; Doc. 37-1 at 17-18, 48.)

**C.**    **The City Amends Its Sign Ordinance In 2015 In Response To The Supreme Court's Decision in *Reed v. Town of Gilbert*.**

In June 2015, the U.S. Supreme Court issued its decision in *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015). In *Reed*, the Supreme Court held that the Town of Gilbert's sign code was "content based on its face," and that it was an unconstitutional content-based regulation of speech that could not survive strict scrutiny. *Reed*, 576 U.S. at 159, 164.

In 2015, in response to *Reed*, the City amended its sign ordinance in 2015. Specifically, in or around November 2015, the City adopted Ordinance 15-O-1394, which is titled as an "Ordinance to Amend Chapter 28A (City of Atlanta Sign Ordinance) of the 1982 Atlanta Zoning Ordinance in Response to the United States Supreme Court Decision in *Reed v. Town of Gilbert, Arizona*; and for other Purposes" (the "2015 Ordinance" or "2015 Sign Code"). (Doc. 48 at 6; Doc. 36-4 at 6, ¶ 13; Doc. 39 at 3.) The City admits that it "amended the City of Atlanta Code of Ordinances to align with the Supreme Court's ruling in *Reed*." (Doc. 6 at 10, ¶ 26.) The City further admits that "§ 16-28.019 of the 1982 Sign Code was reversed and its language not included in the current City of Atlanta Code of Ordinances," and that such Section of the 1982 Sign Code was removed to comply with *Reed*. (Doc. 6 at 10-11, ¶ 26; Doc. 37-1 at 24, 26-27, 51-84, 105-164; Doc. 48 at 6.)

Under Section 16-28A.004 of the 2015 Ordinance, a "Nonconforming Sign" is defined as "[a] sign that was lawfully erected prior to the adoption of this chapter

13

and does not conform to the requirements of this chapter or other provisions of part 16." (Doc. 48 at 6; Doc. 37-1 at 110; Doc. 6 at 11, ¶ 27.) The 2015 Ordinance allows a nonconforming sign to remain in use as long as the owner of such sign continually maintains it. (Doc. 48 at 6; Doc. 37-1 at 161; Doc. 6 at 11, ¶ 28.) Thus, the Subject Signs are lawful, nonconforming signs as long as they were lawfully erected prior to the adoption of the 2015 Ordinance and are continuously maintained.

### D.    The City's Issuance Of Conversion Permits Approving The Upgrade Of The Subject Signs Was Appealed To The BZA.

On or around December 7, 2018, Multimedia submitted permit applications to upgrade the sign changing technology for the Subject Signs. (Doc. 48 at 6; Doc. 41 at 6; Doc. 36-4 at 8, ¶ 20; Doc. 39 at 3.) On or around February 15, 2019, the City issued permits BS-201801047 and BS-201900119 (the "Conversion Permits") approving the upgrades of the Subject Signs to LED sign faces. (*Id.*)

The decision to issue the Conversion Permits was challenged by three parties in the following administrative appeal to the Board of Zoning Adjustment of the City ("BZA"): Appeal No. V-19-059 (the "BZA Appeal"). (Doc. 48 at 7; Doc. 41 at 6-7; Doc. 36-4 at 8, ¶ 21; Doc. 39 at 3.) Specifically, the appellants in the BZA Appeal were Janet Lavine for the Hebrew Benevolent Congregation a/k/a The Temple, Steve Baile for Selig Enterprises, and Hament Desai for America's Best Value Inn, and

14

the respondent was the City of Atlanta Office of Buildings. (Doc. 37-2 at 97.)[2]
Ultimately, the BZA denied the challenge to the Conversion Permits. (Doc. 48 at 7;
Doc. 41 at 7; Doc. 36-4 at 9, ¶ 23; Doc. 39 at 3.)

### E.    The Superior Court Appeal Of The BZA's Denial Of The Challenge To The Conversion Permits.

Following the decision by the BZA regarding the Conversion Permits, two of
the challenging parties in the BZA Appeal appealed the BZA's decision to the
Superior Court of Fulton County in Civil Action No. 2019CV323401 (the "Superior
Court Appeal"). (Doc. 48 at 7; Doc. 41 at 7; Doc. 36-4 at 9, ¶ 24; Doc. 39 at 3.)
Specifically, the Petitioners in the Superior Court Appeal were Hament Desai and
the Hebrew Benevolent Congregation a/k/a The Temple (collectively, the
"Petitioners"), the Respondent was the BZA, and the Defendant in Certiorari was
the City. (Doc. 44-1 at 6-21.) After the Petition was filed, the Superior Court granted
Multimedia's Motion to Intervene, and Multimedia was then added as a Defendant
in Certiorari in the Superior Court Appeal. (*Id.* at 23-24.)

The Petition in the Superior Court Appeal was filed pursuant to O.C.G.A. § 5-
4-1, *et seq.*,[3] which governs appeals from decisions by "any inferior judicatory or

---

[2] Multimedia also was allowed to present arguments to the BZA.

[3] O.C.G.A. § 5-4-1, *et seq.* was subsequently repealed and replaced by the Superior
and State Court Appellate Practice Act, O.C.G.A. § 5-3-1, *et seq.*, which became
effective on July 1, 2023.  At the relevant time, however, O.C.G.A. § 5-4-1, *et seq.*
was in effect.

any person exercising judicial powers." O.C.G.A. §§ 5-4-1(a), 5-4-3; (Doc. 44-1 at 6-21; Doc. 37-2 at 89).  In the Superior Court Appeal, Petitioners admitted in their Brief in Support of Petition that they did not challenge the 1993 issuance of the permits for the Subject Signs. (Doc. 44-1 at 45.) Rather, they only were appealing the City's issuance of the Conversion Permits, which were issued in 2019. (*Id.*; Doc. 37-2 at 88-89, 94.)

Ultimately, the Superior Court reversed the decision by the BZA and held that the Conversion Permits were "wrongly issued" pursuant to the 1982 Sign Code. (Doc. 37-2 at 88-95[4]; Doc. 41 at 7; Doc. 48 at 7.)  The Superior Court Order recognized that the Petitioners only "challenged the 2019 Conversion Permits," and that they did not "attack" any previous permitting decisions relating to the Subject Signs.  (Doc. 37-2 at 94.)  Thus, the Superior Court Order did not set aside the original 1993 permits or any other permits for the Subject Signs, except the Conversion Permits.  (*Id.* at 94-95.)

Nothing in the Superior Court Order required the Subject Signs to be removed or for the City to take any enforcement actions.  (*Id.* at 88-95; Doc. 41 at 8; Doc. 48 at 8; Doc. 36-4 at 10, ¶ 28; Doc. 39 at 4.)  Indeed, this fact was admitted by the City. (Doc. 36-4 at 10, ¶ 28; Doc. 39 at 4.)  Thus, only the Conversion Permits were

---

[4] This citation refers to the Final Order in the Superior Court Appeal, which will be referred to as the "Superior Court Order" in this Brief.

implicated in the Superior Court's Order. Moreover, the Superior Court did not analyze or determine whether the 1982 Sign Code is constitutional. (Doc. 37-2 at 88-95.)

### F.    The City's Enforcement Actions After The Superior Court Appeal.

Subsequent to the Superior Court Order, the City of Atlanta Department of City Planning Office of Buildings delivered a Zoning Correction Notice to Multimedia on or around November 17, 2020.  (Doc. 48 at 8; Doc. 41 at 8; Doc. 36-4 at 10, ¶ 29; Doc. 39 at 4.)  This Notice ordered Multimedia to remove the Subject Signs.  (Doc. 48 at 8; Doc. 41 at 8; Doc. 36-4 at 10, ¶ 29; Doc. 39 at 4.)  In response, Multimedia (through counsel) sent a letter to the City of Atlanta Department of City Planning Office of Buildings on or around December 9, 2020.  (Doc. 48 at 8; Doc. 41 at 8; Doc. 36-4 at 10, ¶ 30; Doc. 39 at 4.)  The City did not respond to such letter.  (Doc. 48 at 8; Doc. 41 at 8; Doc. 36-4 at 11, ¶ 31; Doc. 39 at 4.)

Rather, on or around December 18, 2020, the City issued arrest citations to Anderson, the president of Multimedia, and Harrison Coleman, Peach's registered agent.  (Doc. 48 at 8; Doc. 41 at 8; Doc. 36-4 at 11, ¶ 32; Doc. 39 at 4.)  These December 2020 citations list the alleged violations as "illegal signs" against section 16-28A.013(a)(ii), the "1982 Atlanta Zoning Ordinance," and "Chapter 28A."  They also describe the alleged conduct that "the accused did" as follows:  "Fail to remove

two unlawful non-conforming signs from the building . . . that were ruled to be illegal pursuant to Final Order (2019CV323401) issued by [Judge McBurney] of the Superior Court of Fulton County on December 12, 2019." (Doc. 48 at 8-9; Doc. 41 at 8-9; Doc. 36-4 at 11, ¶ 33; Doc. 39 at 4.)  These December 2020 arrest citations were followed by two additional arrest citations, issued to the same individuals with the same allegations and different citation numbers in March 2021.  (Doc. 48 at 9; Doc. 41 at 9; Doc. 36-4 at 11, ¶ 34; Doc. 39 at 4.)

## III.    <u>Standard Of Review</u>.

This Court reviews "a district court's decision on summary judgment *de novo* and appl[ies] the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017); *see also Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015) ("We review *de novo* the grant of summary judgment and the denial of summary judgment.")

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "must come forward with

significant, probative evidence demonstrating the existence of a triable issue of fact." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (quoting *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

## SUMMARY OF THE ARGUMENT

The City's argument that the Plaintiffs' constitutional challenge to the 1982 Sign Code is moot misses the mark because two well-established exceptions to the City's mootness argument apply to this case.

<u>First</u>, the City's purported voluntary cessation of enforcing the 1982 Sign Code does not render Plaintiffs' claims moot because the City is still seeking to enforce the 1982 Sign Code.  As an initial matter, the arrest citations that the City issued to Plaintiffs list the alleged violations as "illegal signs" against section 16-28A.013(a)(ii), the "1982 Atlanta Zoning Ordinance," and "Chapter 28A."  The inclusion of alleged violations of the 1982 Sign Code in these arrest citations shows that the City is actively seeking to enforce the 1982 Sign Code against Plaintiffs.

Further, the City's attempts to enforce the 2015 Sign Code against Plaintiffs are exclusively predicated on the City's argument that the Subject Signs do not comply with the 1982 Sign Code.  As the District Court recognized, the 2015 Ordinance "incorporates prior law by reference for the purposes of determining whether a sign is a nonconforming sign," as the 2015 Ordinance provides that nonconforming signs lawfully erected prior to the adoption of the 2015 Ordinance

are legal signs.  Thus, if 1982 Sign Code was unconstitutional when the 1993 permits were issued, then the Subject Signs are legal, nonconforming signs under the 2015 Ordinance.

Here, there is no dispute that the Subject Signs were permitted in 1993, that they were erected in compliance with such permits, and that they have been part of the Atlanta skyline since then.  The City's sole argument for claiming that the Subject Signs are not lawful, non-conforming signs under the 2015 Ordinance is that the permits for such signs allegedly were wrongfully issued in 1993 pursuant to the 1982 Sign Code.  Therefore, the City's efforts to enforce the 2015 Sign Code against Plaintiffs are inextricably linked to the unconstitutional 1982 Sign Code.

In other words, the City is attempting to enforce the invalid 1982 Sign Code through the vehicle of the 2015 Sign Code.  Thus, as the District Court recognized, "there is a live controversy as to Plaintiffs' rights under the 2015 Ordinance," which necessarily implicates the 1982 Sign Code.

Second, the vested rights exception to the City's mootness argument also is applicable here because Multimedia has vested rights in the Subject Signs and the permits issued for such signs.  When Multimedia obtained the permits for the Subject Signs in 1993, the unconstitutional 1982 Sign Code was in effect.  Accordingly, because the 1982 Sign Code is unconstitutional, Multimedia obtained vested rights

in the 1993 permits for the Subject Signs and in the Subject Signs when it submitted its applications for such permits in 1993.

Additionally, the District Court properly determined that the City was taking action against Plaintiffs based on the 1982 Sign Code. For the reasons previously explained, the City has not discontinued enforcing the 1982 Sign Code. Indeed, the City is relying on the 1982 Sign Code to allege that the permits for the Subject Signs were allegedly wrongly issued in 1993. Thus, since the City is relying on the 1982 Sign Code as its basis for taking enforcement actions against Plaintiffs, it logically follows that Plaintiffs' challenge to the 1982 Sign Code cannot be moot.

## ARGUMENT AND CITATION OF AUTHORITY

**I.**    **The District Court Properly Concluded That Plaintiffs' Constitutional Challenge to The 1982 Sign Code Was Not Moot Because The City Has Not Discontinued Applying It, and Because Multimedia Has Vested Rights in the Subject Signs and the Permits For Such Signs.**

The City's Brief does not dispute that the 1982 Sign Code is an unconstitutional, content-based restriction on speech. (*See generally* Appellant's Br.) Instead, the City contends that "[t]he District Court erroneously held that it had jurisdiction to hear Plaintiffs' constitutional challenges to the 1982 Sign Code because the 1982 Sign Cide had been previously amended and repealed by the City to remove the allegedly unconstitutional provisions, therefore, rendering Plaintiffs' challenges to the 1982 Sign Code moot." (Appellant's Br. at 15.) This argument is meritless.

While it is generally true that "the repeal or amendment of a statute will make a challenge to that statute moot," there are two "important exceptions" that apply to this mootness principle. *Questco Ltd. v. City of Conyers, Ga.*, Case No. 1:03-CV-3489-JTC, 2005 WL 8154508, *2 (N.D. Ga. Sept. 22, 2005). "First, a defendant who voluntarily discontinues his conduct does not necessarily deprive the court of jurisdiction, '[b]ecause of the possibility that the defendant could simply return to his old ways.'" *Id.* (quoting *Seay Outdoor Adver., Inc. v. City of Mary Esther*, 397 F.3d 943, 946-47 (11th Cir. 2005). "Second, if the plaintiff acquired a vested right in the permit at the time of application, the lawsuit will not be moot." *Id.*; *see also Crown Media, LLC v. Gwinnett County, Ga.*, 380 F.3d 1317, 1325 (11th Cir. 2004) ("[T]his Court recognized that a party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law.") Here, both exceptions apply, and the District Court properly determined that Plaintiffs' challenge is not moot.

## A.   The City Has Not Discontinued Enforcing The 1982 Sign Code.

It is well settled that "the mere voluntary cessation of a challenged practice does not render a case moot." *Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627, 629 (11th Cir. 1998). Rather, "voluntary cessation of a challenged practice renders a case moot only if there is no 'reasonable expectation'

that the challenged practice will resume after the lawsuit is dismissed." *Id.*; *see also National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) ("For a defendant's voluntary cessation to moot any legal questions presented and deprive the court of jurisdiction, it must be absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur." (internal quotation omitted)). Here, the City is unmistakably endeavoring to enforce the 1982 Sign Code against Plaintiffs for at least two reasons.

<u>First</u>, the undisputed evidence shows that the City is actively enforcing the 1982 Sign Code against Plaintiffs, as evidenced by the City citing the 1982 Sign Code in the arrest citations at issue in this case. Specifically, it is undisputed that:

- On or around December 18, 2020, the City issued arrest citations to Anderson, the president of Multimedia, and Harrison Coleman, Peach's registered agent. (Doc. 36-4 at 11, ¶ 32; Doc. 37-2 at 40, 210.) These citations list the alleged violations as "illegal signs" against section 16-28A.013(a)(ii), the "*1982 Atlanta Zoning Ordinance*," and "Chapter 28A." (Doc. 36-4 at 11, ¶ 33; Doc. 37-2 at 40, 210-211) (emphasis added).

- These December 2020 arrest citations were followed by two additional arrest citations, issued to the same individuals with the same allegations and different citation numbers in March 2021. (Doc. 36-4 at 11, ¶ 34; Doc. 37-2 at 40-41, 213-214.)

- After this lawsuit was filed, the City agreed to stay the December 2020 and March 2021 arrest citations "pending the outcome" of this lawsuit. (Doc. 6. At 14, ¶ 37; Doc. 36-4 at 12, ¶ 35.)

Accordingly, there are <u>arrest citations against Plaintiffs issued by the City that allege violations of the 1982 Sign Code</u>. Thus, there exists an explicit manifestation of the

City continuing to enforce the 1982 Sign Code – which will continue *after* this lawsuit is dismissed, unless Plaintiffs prevail on their claims.

Second, the City's attempts to enforce the 2015 Sign Code against Plaintiffs are exclusively predicated on the City's argument that the Subject Signs do not comply with the 1982 Sign Code.  Under Section 16-28A.004 of the 2015 Sign Code, a "Nonconforming Sign" is defined as "[a] sign that was lawfully erected prior to the adoption of this chapter and does not conform to the requirements of this chapter or other provisions of part 16."  (Doc. 36-4 at 7-8, ¶ 18; Doc. 6 at 11, ¶ 27; Doc. 37-1 at 110.)  Moreover, the 2015 Ordinance allows a nonconforming sign to remain in use as long as the owner of such sign continually maintains it.  (Doc. 36-4 at 8, ¶ 19; Doc. 6 at 11, ¶ 28; Doc. 37-1 at 49, 161, 163; Doc. 37-2 at 170-183.)  Thus, the District Court properly recognized that "the 2015 Ordinance incorporates prior law by reference for the purpose of determining whether a sign is a nonconforming sign[.]" (Doc. 61 at 8.)

Here, there is no dispute that the Subject Signs were permitted in 1993, that they were erected in compliance with such permits, and that they have been part of the Atlanta skyline since then.  (Doc. 36-4 at 4, ¶¶ 6, 8; ¶ Doc. 6 at 6, ¶ 11; Doc. 37-1 at 15-17, 48; Doc. 37-2 at 14-15.)  In fact, the City's Rule 30(b)(6) representative testified in her May 2019 affidavit: "Throughout the past twenty-five plus years the subject signs have always been in the same location, same size, height and been in

24

public view advertising various tenants who occupy and continue to occupy the building." (Doc. 37-1 at 48; Doc. 37-2 at 14-15.) The Subject Signs have not changed since then. (Doc. 37-2 at 14-15; Doc. 37-1 at 17-18.) This evidence shows that the Subject Signs were erected well before the 2015 Sign Code was adopted, and that they have not changed since they were erected.

Despite these facts, the City argues that that the Subject Signs are not lawful, non-confirming signs under the 2015 Sign Code because the "Subject Signs were wrongfully issued in 1993 and illegal." (Appellant's Br. at 8; Doc. 38 at 1-3, 5-6, 9.) The City's position hinges on the Superior Court Order, which held that the permits for the Subject Signs were "wrongly issued" because the signs "were unlawful at inception" under the 1982 Sign Code. (Appellant's Br. at 8; Doc. 38 at 2, 5-6, 8-9; Doc. 37-2 at 88-95.) Therefore, the City's efforts to enforce the 2015 Sign Code against Plaintiffs are inextricably linked to the unconstitutional 1982 Sign Code. (Doc. 61 at 8.) Accordingly, the District Court properly recognized that "[i]f the 1982 Sign Code was unconstitutional at the time the 1993 permit was . . . issued, then the Subject Signs are nonconforming signs under the 2015 Ordinance, because in the absence of a valid zoning ordinance, 'an owner[] [has the] right to freely use his property for any lawful purpose.'" (Doc. 61 at 8 (quoting *Fayette Cnty. v. Seagraves*, 264 S.E.2d 13, 15 (Ga. 1980).) Thus, as the District Court recognized, "there is a live controversy as to Plaintiffs' rights under the 2015 Ordinance." (*Id.*)

**B.**    **Multimedia's Property Rights In The Subject Signs And Permits Vested Prior To The Enactment Of The 2015 Ordinance.**

This Court has recognized that "a party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law*." Crown Media, LLC*, 380 F.3d at 1325. "Whether a plaintiff has obtained vested property rights in a sign or permit is a question of state law." *Id.*

Under Georgia law, "[w]here a zoning ordinance is invalid, there is no valid restriction on the property, and the [landowner] has the right under the law to use the property as it so desires." *Brantley County Development Partners, LLC v. Brantley County, Ga.*, 540 F. Supp. 3d 1291, 1312 (S.D. Ga. 2021); *see also Tilley Properties, Inc. v. Bartow County*, 261 Ga. 153, 155 (1991) ("Where, as in this case, the zoning ordinance is invalid, there is no valid restriction on the property, and the appellant has the right under the law to use the property as it so desires.")   Thus, an unconstitutional, invalid ordinance cannot prevent a party from obtaining vested rights in signs or permits. *See Fulton County v. Action Outdoor Advertising, JV*, 289 Ga. 347, 349 (2011) ("The trial court also correctly determined that the invalidity of the Fulton County sign ordinance resulted in there being no valid restriction on the construction of billboards in Fulton County and therefore, the sign companies obtained vested rights in the issuance of the permits they sought.")   Accordingly,

26

because the 1982 Sign Code is unconstitutional, Multimedia obtained vested rights in the 1993 permits for the Subject Signs and in the Subject Signs when it submitted its applications for such permits in 1993.

The holding in *Action Outdoor Advertising* is on point. In that case, after Fulton County denied certain sign companies' applications for permits to construct billboards, the sign companies sued, arguing that the sign ordinance was unconstitutional under the First Amendment of the United States Constitution. *Id.* at 347. The trial court granted summary judgment in favor of the sign companies, "finding they had a vested right to erect their billboards" after the Georgia Supreme Court determined that the Fulton County sign ordinance was unconstitutional in a separate case. *Id.*

Subsequently, Fulton County claimed it lacked jurisdiction to issue the permits because new cities within the County had been formed and the sites were located within such cities. *Id.* at 348. The sign companies then filed a new action against the cities, and the trial court granted summary judgment in favor of the sign companies based on the determination that the companies had a vested right to erect the billboards as of the date their applications were filed. *Id.* The Supreme Court of Georgia affirmed and held that "[b]ecause the Fulton County sign ordinance was struck down in its entirety on constitutional grounds, the ordinance was wholly void and of no force and effect from the date it was enacted." *Id.* The Supreme Court of

27

Georgia further held that "the invalidity of the Fulton County sign ordinance resulted in there being no valid restriction on the construction of billboards in Fulton County and therefore, the sign companies obtained vested rights in the issuance of the permits they sought." *Id.* at 349. Specifically, "in the absence of any valid Fulton County sign ordinance, there was no valid restriction on the construction of signs in Fulton County at the time the sign companies' applications were filed, and the sign companies obtained vested rights upon filing of proper applications." *Id.*

The same principles apply here. There is no dispute that Multimedia submitted its sign permit applications for the Subject Signs and received permits pursuant to such applications in 1993, when the 1982 Sign Code was in effect. (Doc. 37-1 at 15-16, 47; Doc. 36-4 at 4, ¶ 6; Doc. 6 at 6, ¶ 11; Doc. 37-2 at 14; Doc. 38 at 3.) There also is no dispute that the Subject Signs were erected in compliance with such permits. (Doc. 36-4 at 4, ¶ 8; Doc. 37-1 at 17.) Thus, because the 1982 Sign Code is unconstitutional, there were no valid sign restrictions at the time that Multimedia's permit applications were filed, and Multimedia obtained vested rights in the Subject Signs and the issuance of permits for such signs upon the filings of its applications. *Action Outdoor Advertising, JV*, 289 Ga. at 349; *see also Tilley Properties, Inc.*, 261 Ga. at 155 (holding that a party is entitled to a writ of mandamus to compel the issuance of a certificate of land use when a zoning ordinance is invalid because "there is no valid restriction on the property").

Because of Multimedia's claim of vested rights, Plaintiffs' claims are not moot. The holding in *Crown Media* is on point. In that case, Gwinnett County issued Crown Media both a sign permit and a building permit in September 1998, when a 1990 sign ordinance was in effect. *Crown Media, LLC*, 380 F.3d at 1319. Gwinnett County subsequently amended its sign ordinance in 1999 and sent a letter to Crown Media in March 2000 stating that its sign failed to comply with the 1990 ordinance. *Id.* at 1320. It then sent Crown Media a notice in July 2000 "stating that its sign violated Gwinnett County's sign ordinance and must be removed." *Id.* at 1321. After that, Gwinnett County adopted another new sign ordinance in August 2001. *Id.* at 1322-1323.

Crown Media filed a lawsuit against Gwinnett County, "seeking declaratory relief that the 1990 and 1999 ordinances are unconstitutional and injunctive relief against Gwinnett County's continued enforcement of the height and location restrictions in these ordinances." *Id.* at 1323. Crown Media's lawsuit did not challenge the constitutionality of the 2001 sign ordinance, and Gwinnett County contended that the enactment of such new ordinance mooted Crown Media's constitutional challenges. *Id.* This Court rejected this argument. In doing so, this Court reasoned that:

> [I]f the 1990 ordinance is unconstitutional, Gwinnett County cannot rely, as it does, on the 1990 ordinance to require Crown Media to remove its sign. As of this juncture, Gwinnett County has identified no other restrictions regarding sign size or location in existence at the time

Crown media applied for its permits and erected its sign. Further, if the 1990 ordinance is unconstitutional and if, as Crown Media claims, the restrictions in Crown Media's signs and building permits stem from and depend on that 1990 ordinance, then under Georgia law the restrictions in Crown Media's permits would be void and unenforceable as well. This observation illustrates that <u>the existence and scope of Crown Media's property rights in its permits and erected sign under state law and the extent to which they vested prior to the enactment of the 2001 ordinance cannot be fully ascertained until the constitutionality of the 1990 ordinance is determined</u>. <u>Therefore, we conclude that Crown Media's challenge to the constitutionality of the 1990 ordinance is not moot</u>.

*Id.* at 1329-30 (internal citation omitted and emphasis added). This case dispositively shows that the City's mootness argument does not apply here.

To the extent that the City attempts to argue that the Superior Court Order establishes that Multimedia does not have vested rights, any such argument would be misplaced and incorrect. While the Superior Court Order held that Multimedia did not have vested rights, that analysis was based solely on the Superior Court's holding that the permits were not properly issued under the 1982 Sign Code. (Doc. 37-2 at 93-94.) The Superior Court did not address whether Multimedia had vested rights if the 1982 Sign Code was determined to be unconstitutional, or otherwise address the issues presented in this case. (Doc. 37-2 at 88-95.) This is because the constitutionality of the 1982 Sign Code was not an issue in the Superior Court Appeal. (*Id.*) It became an issue only when the City, after the Superior Court case,

sought to enforce a Sign Code that the City itself had concluded was unconstitutional and had since replaced.[5]

In sum, Plaintiffs' challenge to the constitutionality of the 1982 Sign Code is not moot because the scope of Multimedia's property rights in its permits and erected signs under state law <u>and</u> the extent to which they vested prior to the enactment of the 2015 Ordinance cannot be fully ascertained until the constitutionality of the 1982 Sign Code is determined. The District Court properly concluded that the 1982 Sign Code was unconstitutional. (Doc. 61 at 6-9.) Accordingly, Multimedia has vested rights in the Subject Signs and the permits for such signs, and the City's mootness argument is misplaced as a matter of law.

## II. <u>The District Court Properly Concluded That The City Was Taking Action Against Plaintiffs Based On The 1982 Sign Code</u>.

Next, the City argues that the "District Court erred in holding that the City was taking action against Plaintiffs based on the 1982 Sign Code when the City was

---

[5] Notably, the City does not, and cannot, contend that any of Plaintiffs' claims are barred by the doctrines of claim preclusion or issue preclusion. Indeed, in the Order and Notice, the District Court asked the parties to file briefs "addressing whether the Court should grant summary judgment against Plaintiffs on all or part of their claims on the grounds that such claims are barred by the *Rooker-Feldman* doctrine (or related doctrines of issue or claim preclusion)." (Doc. 41 at 14-15.) Plaintiffs' response brief explained why the doctrines or issue preclusion and claim preclusion do not apply as a matter of law, and the City's response brief did not contend that any of Plaintiffs' claim are barred by either such doctrine. (Doc. 43; Doc. 45.) Moreover, the City also did not raise any preclusion argument in its response to Plaintiffs' motion for summary judgment. (Doc. 38.)

clearly acting under the 2015 Sign Code and enforcing the [Superior Court Order]."
(Appellant's Br. at 21.)  This argument is baseless for at least three reasons.

First, for the reasons previously explained, the City has not discontinued
enforcing the 1982 Sign Code.  *See Supra* Argument, § I(a).  Likewise, for the
reasons previously explained, if the 1982 Sign Code is unconstitutional, then the
City cannot rely on it to require Plaintiffs to remove the Subject Signs, as Multimedia
has vested rights in such signs.  *See Supra* Argument, § I(b).  Thus, since the City is
relying on the 1982 Sign Code as its basis for claiming that the permits for the
Subject Signs were purportedly "wrongly issued" in 1993, it is taking action against
the Plaintiffs based on the 1982 Sign Code.  (*See* Appellant's Br. at 8.)

Second, the City's claim that its actions against Plaintiffs were purportedly to
enforce the Superior Court Order is incorrect.  The Superior Court Order recognized
that the Petitioners only "challenged the 2019 Conversion Permits," and that they
did not "attack" any previous permitting decisions relating to the Subject Signs.
(Doc. 37-2 at 94.) Thus, the Superior Court Order did not set aside the original 1993
permits or any other permits for the Subject Signs, except the Conversion Permits.
(*Id.* at 94-95.)  Importantly, nothing in the Superior Court Order required the Subject
Signs to be removed or for the City to take any enforcement actions. (*Id.* at 88-95;
Doc. 41 at 8; Doc. 48 at 8; Doc. 36-4 at 10, ¶ 28; Doc. 39 at 4.)  Only the Conversion
Permits were implicated in the Superior Court's Order.

Third, the City's argument that Plaintiffs are seeking to "overturn" the Superior Court Order is misguided for the same reasons. (Appellant's Br. at 21-22.) The Superior Court Order did not address the validity of any of the City's enforcement actions. (Doc. 37-2 at 88-95.) In fact, it could not do so because all the City's enforcement actions took place after the Superior Court Order was entered. (Doc. 37-2 at 88-95; Doc. 48 at 8-9; Doc. 41 at 8-9; Doc. 36-4 at 10, ¶ 29; Doc. 36-4 at 11, ¶¶ 32-34; Doc. 39 at 4.) This fact was recognized in a prior opinion by this Court, which stated that "[a]lmost a year after the superior court's decision, [the City] demanded that Multimedia remove its signs," and that the City subsequently "issued arrest citations to Multimedia's president and Peach's registered agent." (Doc. 57 at 3.) Tellingly, the District Court held that the *Rooker-Feldman* doctrine did not bar any of Plaintiffs' claims, and the City does not dispute this holding in its appeal. (Doc. 61 at 3-6; Appellant's Br. *generally*.)[6]

In sum, as the District Court recognized, the City does not even dispute that the 1982 Sign Code is an unconstitutional, content-based law that violates the First and Fourteenth Amendments of the U.S. Constitution. (Doc. 61 at 8; Doc. 38; *see*

---

[6] Plaintiffs further adopt by reference Multimedia's Appellant's Brief in Case No. 22-13625, which was a prior appeal to this Court in this case. Multimedia's Appellant Brief in that case explains that Plaintiffs are not seeking to "overturn" the Superior Court Order.

*also* Appellant's Br. *generally*.)  Thus, the District Court correctly concluded that the City's efforts to enforce such Sign Code are unconstitutional.  (Doc. 61 at 6-9.)

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court affirm the Summary Judgment Order and corresponding Judgment that were entered in favor of Plaintiffs and against the City.

Respectfully submitted, this 5th day of March, 2025.

*/s/ Craig G. Kunkes*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Craig G. Kunkes
Georgia Bar No. 963594
ckunkes@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:   (678) 701-9381
Facsimile:    (404) 856-3255

*Attorneys for Plaintiffs-Appellees*
*Multimedia Technologies, Inc.*
*and Geoffrey Anderson*

*/s/ Ken E. Jarrard (w/ express permission)*
Ken E. Jarrard
Georgia Bar No. 389550
kjarrard@jarrard-davis.com
JARRARD & DAVIS, LLP
222 Webb Street
Cumming, Georgia 30040
Telephone: (678) 455-7150

*Attorney for Plaintiff-Appellee*
*Peach Hospitality of Georgia, LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4, this document contains 8,758 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This 5th day of March, 2025.

> */s/ Craig G. Kunkes*
> Richard L. Robbins
> Georgia Bar No. 608030
> rrobbins@robbinsfirm.com
> Craig G. Kunkes
> Georgia Bar No. 963594
> ckunkes@robbinsfirm.com
> Robbins Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, Georgia 30318
> Telephone:  (678) 701-9381
> Facsimile:   (404) 856-3255
>
> *Attorneys for Plaintiffs-Appellees*
> *Multimedia Technologies, Inc.*
> *and Geoffrey Anderson*
>
> */s/ Ken E. Jarrard (w/ express permission)*
> Ken E. Jarrard
> Georgia Bar No. 389550
> kjarrard@jarrard-davis.com

JARRARD & DAVIS, LLP
222 Webb Street
Cumming, Georgia 30040
Telephone: (678) 455-7150

*Attorney for Plaintiff-Appellee*
*Peach Hospitality of Georgia, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2025, I electronically filed the foregoing

**BRIEF OF PLAINTIFF-APPELLANT MULTIMEDIA TECHNOLOGIES,**

**INC.** through the Court's CM/ECF system, which will send a Notice of Electronic

Filing to all participants who are registered CM/ECF users. Further, I certify that I

have caused a copy of the foregoing to be sent via first class mail to the following:

Meredith W. Germain
Valerie A. Ross
Turner Ross Germain, LLC
1501 Johnson Ferry Road, Suite 100
Atlanta, Georgia 30062

This 5th day of March, 2025.

*/s/ Craig G. Kunkes*
Richard L. Robbins
Georgia Bar No. 608030
Richard.Robbins@robbinsfirm.com
Craig G. Kunkes
Georgia Bar No. 963594
ckunkes@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3255

*Attorneys for Plaintiff-Appellees*
*Multimedia Technologies, Inc. and Geoffrey*
*Anderson*